Garland *v.* Williams.

HENRY C. GARLAND *versus* JAMES W. WILLIAMS.

The plaintiff was arrested on an execution and gave the bond provided by statute. The last day of the six months was Sunday. He commenced his disclosure on Saturday, but the proceedings not being completed the justices adjourned to meet at the jail on Monday. Before the expiration of the six months, the debtor, to save a breach of the bond, voluntarily surrendered himself and went into jail. He was allowed to take the poor debtor oath on the Monday following by the justices, who gave him a certificate thereof, by force of which he demanded his ·release of the keeper of the jail; which being refused, he brought an action of personal replevin against the jailer: *Held*, that the action could not be maintained; and that the defendant have judgment for a redelivery of the body of the plaintiff, to be disposed of as the law provides.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

THIS was an action of PERSONAL REPLEVIN, against the defendant, who was the keeper of the jail in Bangor, under the sheriff of the county of Penobscot,—to replevy the person of the plaintiff from his custody.

The plaintiff having been arrested on an execution, on the 26th day of June, A. D. 1858, gave the bond provided by statute, to be released from arrest. He caused the creditors in the execution to be cited to attend on the 25th day of December, to hear his disclosure, when he would claim to take the oath provided for poor debtors. The parties met at the place and time designated by the notice. The limitation of six months expired on the next day, Sunday. The examination of the debtor was continued on Saturday, by the attorney of the creditors, until a few minutes before twelve o'clock of that night. The debtor then signed the disclosure he had made. The justices adjourned the further proceeding upon the disclosure to the office of the jail in Bangor, to Monday the 27th of said December; and, before that day, the plaintiff had surrendered himself to the jailer.

On the 27th of December, the justices met according to adjournment, when the attorney of the creditors, protesting that further proceeding of the justices was unauthorized, objected thereto; and objected further that the justices

Garland *v*. Williams.

could not adjourn to a place other than that named in the citation.

But the justices overruled the objections, and administered to the debtor the oath provided by statute, and delivered to him a certificate of discharge, by force of which he demanded of the defendant to be released from imprisonment; but the jailer declined to release him. He was subsequently enlarged by this process of replevin.

Upon the trial, the plaintiff offered to prove, that the examination of the debtor was intentionally and unnecessarily protracted by the creditors, to consume the time to twelve o'clock, and thus prevent the debtor from obtaining a discharge. And that, after the debtor had signed the disclosure, the counsel of the creditors objected to the administration of the oath to the debtor, on the ground that he wished to produce testimony and have an opportunity to be heard in the argument of the case; that it was in consequence of this request by the creditors that the justices adjourned for further proceeding.

The plaintiff claimed to introduce this testimony, as these facts are not stated in the record of the magistrates, and do not contradict it.

The presiding Judge excluded the testimony. The parties thereupon agreed that the case should be reported for the decision of the full Court.

The debtor was arrested on an alias execution of the date of June 15th, A. D. 1858. The certificate of discharge of the justices describe the execution on which the debtor was arrested, as having been issued on the 10th day of February, A. D. 1858, and that the debtor, "on the 26th day of June, A. D. 1858, was enlarged on giving bond to the creditors.

The case was argued by

*Knowles*, for the plaintiff, and by

*H. M. Plaisted*, for the defendant.

Garland *v.* Williams.

The opinion of the Court was drawn up by

, Appleton, J.—This is an action of personal replevin against the defendant as keeper of the jail in Bangor.

The plaintiff having, on 26th June, 1858, been arrested on execution, gave a bond with the conditions prescribed by law. After duly notifying the creditor in the execution on which he had been arrested to hear his disclosure, on 25th December, 1858, he commenced the same. Before it was finished or the oath taken, he, on the same day, voluntarily surrendered himself to jail, and, after his commitment, and on 27th December, took the poor debtor's oath.

By voluntarily surrendering himself, the plaintiff performed one of the conditions of his bond and the sureties thereon were discharged.

The writ *de homine replegiando* lies in favor of a person unlawfully imprisoned. The plaintiff was not unlawfully imprisoned, for he was in jail by a voluntary self surrender. He was then "in jail on an execution in a civil suit."

The form of a certificate in case of the imprisonment of the poor debtor is given in R. S., 1857, c. 113, § 31, which, by § 32, is to be filed in the office of the jailer, whereupon he is to be set at liberty.

The plaintiff could not file such a certificate for no such had been signed by the magistrates. The one given was applicable to the case of a poor debtor arrested on execution and "enlarged on giving bond to the creditor." It was for one at liberty and not for one then in prison. It gave no authority to the prison keeper to set at liberty the debtor then in his custody, for it was not applicable to one imprisoned.

The plaintiff, then, was a poor debtor, who voluntarily surrendered himself to discharge his sureties. He cannot, when imprisoned, take advantage of an incomplete disclosure, commenced before his surrender. He must, it would seem, commence his proceedings *de novo* for a discharge.

As the plaintiff surrendered himself before completing his disclosure, what took place at that time becomes immaterial.

The certificate of the justices describes a different execu-

tion from that on which the bond was given, and no motion to amend has been made.

According to the agreement of parties, a nonsuit must be entered, and the defendant have judgment for a redelivery of the body of the plaintiff, to be disposed of agreeably to law. *Hutchins* v. *Van Bokelen*, 34 Maine, 126.

*Plaintiff nonsuit.*

Rice and Davis, JJ., concurred.

Tenney, C. J., and Cutting, J., concurred in the result.

Kent, J., concurred in the result, on the ground, that the discharge, or certificate of the justices, does not properly describe the case, — and the execution therein named is of a date different from that on which the plaintiff was imprisoned; and non-concurred in the opinion as to the giving new notice.

May, J., dissenting. — The facts in this case show that the plaintiff, having been arrested upon execution, gave a poor debtor's bond in the usual form; and, to save himself and sureties against a forfeiture thereof, surrendered himself into the custody of the defendant, who was the keeper of the jail in Penobscot county, to which he was liable to be committed under said execution. It further appears, that prior to such surrender he had cited the creditors before two justices of the peace and of the quorum; submitted himself to examination at the time and place appointed therefor; and, under the direction of the magistrates, actually completed and signed his disclosure. So far all the proceedings are in conformity with the provisions of the statute. It being Saturday, and near midnight, and the creditors desiring to offer other evidence and to be heard by their counsel in the matter, the magistrates, without request from either party, adjourned to Monday morning at nine o'clock to meet at the office of the jail in Bangor, within which the plaintiff, having surrendered himself, as before stated, would then, of necessity, be confined. The time within which one of the alternatives contained in the condition of the bond must be performed to prevent forfeiture, expired on Sunday, the day

next after the plaintiff's disclosure and surrender. His voluntary surrender was therefore a performance of the bond; but he could not be discharged from the custody of the jailer without taking the oath required by the statute. The magistrates met at the time and place of their adjournment, being other than that which was originally appointed, and, against the protestation of the creditors, proceeded to hear such evidence as they offered, and, after a full hearing of the parties, adjudged that the plaintiff was entitled to take the oath, and thereupon administered the same and gave him a certificate of the fact, though not strictly, yet substantially in the form required by the R. S., c.·113, § 31. The plaintiff presented this certificate to the defendant, to whom it was directed, and demanded to be released from his imprisonment. This the defendant refused.

Upon the foregoing facts, the question is, was the plaintiff entitled to his discharge? The fact that he voluntarily surrendered himself to imprisonment did not justify its continuance, after he became entitled to his discharge. If he was so confined, then his further imprisonment was unjust and unlawful, and this action of replevin for his person well lies. The writ, *de homine replegiando*, is expressly designed for such a case. See R. S., 1857, c. 101, § 1, and *Hutchins* v. *Van Bokelen*, 34 Maine, 126. Whether the plaintiff was entitled to his discharge upon the facts stated, depends upon the true construction of the statute for the "relief of poor debtors." R. S., 1857, c. 113.

The design of this statute, as stated in its own words, is, that a debtor, in an execution running against his body, "may be arrested and imprisoned thereon for *the purpose* of obtaining a discovery of his property wherewith to satisfy it." Section 21. No part of the statute contemplates the punishment of an honest debtor for his failure to pay his debts; nor should it receive a construction, unless its language necessarily requires it, that will produce any such effect. While it should be so construed as rigidly to secure to creditors legal notice of the time and place appointed for the debtor's examination, and a full and fair disclosure as to his goods and

estate, no such construction should be adopted, or regarded as admissible, as will make it needlessly oppressive to the debtor, by subjecting him to any more imprisonment or expense than is necessary to effectuate the general purpose of the statute. If the creditor gets everything which the statute and the imprisonment of the debtor was designed to give, of which the tribunal which the statute provides, when duly organized, is the judge, then his rights under the statute are at an end, and he has no legal ground of complaint. That the creditors, in the execution against the plaintiff, have obtained, in the judgment of the magistrates, a full and fair disclosure of the actual state of the debtor's affairs and property, is not to be denied. Nor can it be denied that they have had the same notice, the same tribunal, the same examination, and the same oath administered, which the statute contemplates. It is true, the plaintiff was not actually in prison when his citation issued. He had been discharged from his arrest by giving a statute bond, which was substituted for imprisonment until the time limited for the performance of its condition should expire; and no reason is perceived, why a citation issued during this period, especially when it is precisely the same in kind, may not be as effectual as one issued after the debtor had surrendered himself into the custody of the jailer. The right of the plaintiff to a certificate of discharge was in no way dependent upon his bond. He was equally entitled, by a compliance with the provisions of the statute, to an exemption from imprisonment, after the performance of the condition of his bond as before. He might have cited and disclosed immediately upon his arrest, without giving any bond; and, after citing, he might, for the safety of the officer, have gone into prison and remained there until the time appointed for his disclosure should arrive, without affecting the legality of the citation he had given, and, for the same reasons, he may avail himself of a citation issued while under bond, after he has voluntarily surrrendered to imprisonment to save its condition. A construction of the statute which

would require the debtor to cite anew, at additional expense, and to remain in prison at least fifteen days *after* his surrender, when he had given the legal notice of his intention to take the poor debtor's oath fifteen days before, of the time and place appointed for his disclosure, would not only be useless, but barbarous, and, therefore, a reproach upon the law. It would make the statute an engine of oppression instead of *relief*. Such a construction is wholly inadmissible.

But, it is said that the citation, though legal in its character, may be waived by the debtor. This is undoubtedly so. But a waiver is always a question of intention, express or implied, and is usually resorted to, to prevent injustice. *Simonds* v. *Parker*, 1 Met., 511. It ought not to be raised by implication, except in clear cases, when its effect is to prevent the end at which it aims. Under the circumstances of his surrender, is it not too much to infer from it, that the defendant intended a waiver of any of his rights, existing by virtue of his previous citation? Why should an intention to give a new notice be presumed, when a legal one, sufficient for his purpose, already existed, especially when such new notice would imply a voluntary incarceration in prison, which might be avoided under the old one. Such a presumption is not only repelled by the subsequent conduct of the plaintiff, but is against the usual tendencies and motives of human action. This case is widely different from the case of *Williams* v. *McDonald*, 18 Maine, 121. There the debtor, after having once cited his creditor, gave a poor debtor's bond to relieve himself from imprisonment, in which one of the conditions was, to cite the creditor, and take the oath required by the statute. The very language of this condition imposed a new notice, and was, therefore, an express waiver of the notice which had been given, so far as the fulfilment of the bond was concerned. The case simply decides that what was stipulated in the bond *to be done in the future*, could not be regarded as performed, by showing that the obligor had done the same thing before the

bond was made. It has no tendency to show a waiver under the circumstances of the present case.

But, it is further urged, that the certificate of the justices was insufficient in form to authorize the plaintiff's discharge. That it was sufficient to carry notice to the defendant, that the plaintiff had taken the oath required by law to entitle him to his release from imprisonment, cannot well be denied. It was the *oath* and not the certificate that conferred such right. The certificate is only evidence that the oath had been taken. After the oath has been administered, it is made the duty of the justices to give a certificate, and such certificate is conclusive evidence of the fact. But it is no where in the statute made the only evidence upon which the jailer can act. Might he not, if personally present when the oath was administered, act upon his own knowledge of the fact and discharge the debtor, without subjecting himself to an action therefor? The certificate, although the best evidence, is not necessarily a condition precedent to the debtor's discharge; and, to require that such certificate, after the oath has been duly taken, shall be made in the *exact form* which the statute prescribes, would often make the statute a trap instead of a relief. It surely is sufficient if it substantially state the facts which entitle the debtor to his discharge.

Again, it is contended that the magistrates had no power to adjourn from the office of Mr. Knowles to that of the jail. There is no express prohibition in the statute to prevent their adjourning to a place other than that appointed in the citation, when necessity requires it, as there is in relation to the time beyond which they shall not adjourn. There being no restriction, no reason is apparent why the magistrates should not have the power usually incident to such tribunals, of consulting their own convenience as well as the wishes or necessities of the parties, by adjourning to any reasonable place. Circumstances beyond the control of the magistrates may exist to render such adjournment absolutely necessary. The jurisdiction of the magistrates was not

therefore lost by their adjournment, and their certificate of discharge was effectual and entitled the plaintiff to his release from imprisonment. The result is, that the defendant, in my judgment, should be defaulted, but, as the evidence shows no design to oppress or intentional violation of his official duty, the damages should be only nominal.